IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ORLANDO BLACKWELL,

    Petitioner,                    No. CIV S-02-0821 FCD CMK P

    vs.

SILVIA GARCIA, et al.,

    Respondents.               FINDINGS AND RECOMMENDATIONS

                            /

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered in the Sacramento County Superior Court after a jury found him guilty of two counts of robbery and that he had sustained two prior serious felony convictions (for two strikes and two five-year enhancements) and one prison prior conviction (for a one-year enhancement). Petitioner was sentenced to fifty years to life, plus eleven years, in state prison.

Procedural History[1]

        In Sacramento County Superior Court, a jury found petitioner guilty of two counts of robbery in violation of California Penal Code § 211. In a separate proceeding, the trial court sustained the allegation that petitioner had two prior serious felony convictions under California

---

[1] See Pet. at pages numbered 1 through 4; Resp't's Answer at 2-3 and Ex. A-H.

1

Penal Code 667 and one prior prison term under California Penal Code 667.5(b). On August 7, 1998, the court sentenced petitioner to a total term of imprisonment of fifty years to life plus eleven years.

On February 19, 1999, petitioner filed an appeal with the California Court of Appeal, Third Appellate District, alleging grounds for relief not present in the petitioner's federal habeas petition. On April 11, 2000, the Court of Appeal affirmed the judgment. On August 7, 2000, petitioner filed a petition for review in the Sacramento Superior Court, which was denied on August 28, 2000. On January 30, 2001, petitioner filed another petition for review in the California Court of Appeal, Third Appellate District, which was denied on February 1, 2001. Finally, petitioner filed a petition for review with the California Supreme Court on September 6, 2001. The California Supreme court denied this petition on December 19, 2001.

On April 18, 2002, the petitioner filed a federal petition for review with this court. On November 12, 2002, this court ordered the respondent to file its response. The petitioner's federal petition for writ of habeas corpus is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because the petition was filed on June 14, 2002.

Factual Background[2]

> On July 9, 1997, Tamara Olsen was walking to her car which was parked near the Department of Motor Vehicles (DMV) when she saw a man approaching her. As they passed, the man grabbed Olsen's purse and the two struggled. Olsen released the purse after being struck several times and knocked to the ground. Shown a photographic lineup, Olsen selected two photographs as looking like her assailant, one of which was that of petitioner. Olsen also identified petitioner at the preliminary hearing, being 75 percent sure of her identification, and again at trial, being "almost positive" of her identification.

---

[2] The facts of petitioner's crime are not in dispute. The summary of facts contained in the unpublished opinion of the California Court of Appeals are set forth as background to the discussion of petitioner's jury instruction claims. For convenience, the word "defendant" has been replaced with the word "petitioner."

Rick Spears heard Olsen scream and saw a man running with a purse. The man dove into the passenger side window of a Monte Carlo, which sped away. Shown a photographic lineup, Spears pointed out two photographs, one of which was that of petitioner, which appeared similar to the man Spears had seen. At the preliminary hearing and at trial Spears identified petitioner, but could not be "100 percent" sure of either identification.

Rommel Lockett, having been granted immunity, testified he drove his Monte Carlo to the DMV to obtain an identification card, and petitioner was with him. Leaving petitioner in the car, Lockett went into a DMV building, was told he was in the wrong building and returned to his car. Petitioner was leaning against the car, smoking a cigarette. As Lockett began to drive out of the parking lot, petitioner dove in through the window, yelling, "Let's go, get out of here." As Lockett drove, petitioner pulled a purse from beneath his shirt.

On August 16, 1997, about 1 p.m., Linda Shaw was walking to her truck in the Camellia Shopping Center located at Folsom and 59th Street. She was carrying her dry cleaning and her purse. A man ran toward her yelling, "dirty-rotten mother-fucking white bitch" and struck her, knocking her down. The man grabbed her purse and dry cleaning and fled. As he ran he yelled, "go, go, go," and a green pickup screeched to a stop and picked him up.

Edgar Hull, a bartender working near where Shaw was robbed had seen a man run by the window, heard a truck start and someone yell, "go, go, go." The man was carrying clothing. Although Hull didn't see anyone get into the pickup, he saw it head toward 59th Street.

Sheriff's Deputy Michael Scheuring, who was off duty and in a nearby establishment, was told of the robbery and that the getaway vehicle was a green pickup. Scheuring drove his jeep in the direction the pickup had fled. Scheuring saw two pickups, selected one because it was speeding and one of its three occupants had ducked down and followed it. After obtaining its license number, Scheuring stopped and relayed the license number to another officer.

Officer James Deaton was in the area of the robbery and heard the broadcast regarding the get-away pickup. He saw the pickup parked near 7th Avenue and 39th Street. A woman got into it and began driving away. Deaton stopped her, determined her name was Linda Christian and that her residence was on 7th Avenue, about one block from the stop.

Deaton, accompanied by another officer, went to the door of Christian's residence and were admitted by Alvin Mayo, who also lived there. Inside the residence the officers found petitioner

3

laying on the floor in a bedroom with his eyes closed and the television on.

[Shaw] was transported to Christian's residence to see if she could make an identification. Two men were standing on the porch, neither of which was the robber. However, Shaw could see petitioner inside the residence, believed he was the robber and asked one of the officers to bring him out. As Shaw stood "face to face" with petitioner, he said, "If you ...identify me as the one that did this, you're wrecking my life forever." Shaw looked at petitioner for a while and said, "Look at me. I'm bleeding....You would do this to a woman of my age?" Petitioner looked down at the ground.

Hull, who had also been brought to the scene, told Shaw that petitioner was "not the man" and that "you better not identify him because he's not the man." One of the officer's told Shaw that she "had to be 100 percent right before you say that's him." Shaw became confused and intimidated and although she was "80 percent sure that it was him," Shaw did not make an identification.

Hull testified that when he was brought to Christian's residence he couldn't identify petitioner; however, he did identify the pickup driven by Christian as the one which drove off down 59th Street. Petitioner was not arrested at that time.

Linda Christian and Darrel Miller, after each was granted immunity, testified that Christian drove Miller and petitioner to the shopping center at 59th and Folsom in the green pickup. Miller testified that at the shopping center Christian and petitioner got out of the truck, but he remained and fell asleep. The next thing he recalled was petitioner entering the truck saying, "go, go, go." Miller then drove off, stopping only to pick up Christian. According to Christian , when they got to the shopping center, she and petitioner got out of the truck. She went to pick up pieces of cardboard and he walked away. Miller remained in the pickup. Christian heard petitioner saying, "let's go, let's go." She ran to the truck, got in and they drove off. When they got out of the truck, petitioner had a black bag.

No witnesses were called on behalf of the petitioner.

Standard of Review

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. Engle v. Isaac, 456 U.S. 107, 119 (1982); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985). A federal writ is not available for alleged error in the interpretation or application of state law. Estelle v. McGuire, 502 U.S.

62, 67-68 (1991); <u>Givens v. Housewright</u>, 786 F.2d 1378, 1381 (9th Cir. 1986).

Section 2254 as amended in 1996 [3] sets forth the following standards of review to be applied by federal courts to state court decisions:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2). See <u>Penry v. Johnson</u>, 532 U.S. 782, 792-96 (2001); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001).

<u>Analysis</u>

I. <u>Procedural Default</u>

"In a federal habeas action brought by a state prisoner, federal courts 'will not review a question of federal law decided by a state court if the decision of that court rests on state law ground that is independent of the federal question and adequate to support the judgment.'" <u>La Crosse v. Kernan</u>, 244 F.3d 702, 704 (9th Cir. 2001) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991)). Where the application of a state procedural rule provides an adequate and independent state law basis on which the state court can deny relief and the rule prevents the state court from reaching the merits of a federal claim, the prisoner is procedurally barred from pursuing the claim in federal court. <u>Coleman</u>, 501 U.S. at 729-30; <u>Y1st v. Nunnemaker</u>, 501

---

[3] The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 apply to all federal habeas corpus actions filed after April 26, 1996. See <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Calderon v. United States Dist. Ct. (Beeler)</u>, 128 F.3d 11283, 1287 (9th Cir. 1997).

U.S. 797, 801 (1991); Park v. California, 202 F.3d 1146, 1151 (9th Cir.), cert. denied, 531 U.S. 918 (2000). The procedural default rule may apply even if the state court applies a procedural rule and also rejects the merits of the defaulted claim. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Carriger v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992) (en banc); Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991).

First, the government must adequately plead the existence of an independent and adequate state procedural ground as an affirmative defense. Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2002). Then, the petitioner has the burden to place that defense in issue. Id. To satisfy his burden, the petitioner may allege facts that demonstrate the inadequacy of the state procedure. Id. However, the ultimate burden is on the government. Id. The court should ordinarily consider any procedural bar issues first. Lambrix v. Singletary, Jr., 520 U.S. 518, 525 (9th Cir. 1997).

In the present case, the respondent contends that petitioner's claim regarding insufficiency of evidence is procedurally barred. The Sacramento Superior Court rejected petitioner's state habeas petition which consisted of his insufficiency claim, by stating the following:

> The general rule is that habeas cannot be used as a substitute for appeal. Matters which could have been, but were not, raised upon a timely appeal from a judgment of conviction cannot be raised via habeas for the first time (In re Dixon (1953) 41 Cal.2d 756, 759, reaffirmed in In re Harris (1993) 5 Cal.4th 813, 829.) Although there are exceptions to this procedural bar, petitioner's claim fails to meet any of them.

(Resp't's Answer at 9 and Ex. D.) Subsequently, petitioner filed two further habeas petitions which were denied by the state courts without explanation. (See Respondents Answer, Ex. E.)

The court will presume "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same rest upon the same ground." Sandgathe v. F. Maass, 314 F.3d 371, 377 (9th Cir. 2002)(quoting Y1st v. Nunnemaker, 501 U.S. 797, 803 (1991)). The court will "look through" the unexplained

decisions to the court's reasoned decisions absent "strong evidence" that this process would be improper. Id. "The maxim is that silence implies consent, not the opposite..." Y1st v. Nunnemaker, 501 U.S. 797, 804 (1991).

Respondent asserts that this case may be different than the typical "look-through" doctrine because in petitioner's subsequent petitions filed after the Sacramento Superior Court's ruling quoted above, petitioner added an ineffective assistance of counsel claim. As a result, the state appellate and supreme courts had an additional claim beyond petitioner's insufficiency of evidence claim found to be procedurally barred by the Sacramento Superior Court. There is the possibility that the state courts ignored the procedural default issue altogether and denied both claims on the merits. However, both state courts deciding the subsequent petitions did not state why they denied them.

If, instead, the state supreme court relied on grounds separate from those relied on by the lower court which it affirmed, and did not explain which ground applies to which claim, then this court would be unable to resolve the ambiguity. Koerner v. Grigas, 328 F.3d 1039, 1052 (9th Cir. 2003). However, that is not what happened in this case.

As described, supra, the Sacramento County Superior Court found petitioner's insufficiency of the evidence claim procedurally barred because it should have been raised on direct appeal. Petitioner then filed another petition with California Court of Appeals in which he added the claim of ineffective assistance of appellate counsel. The California Court of Appeals denied this petition without explanation. Petitioner then filed a habeas petition with the California Supreme Court containing both petitioner's insufficiency of the evidence claim and his ineffective assistance of counsel claim. The California Supreme Court denied petitioner's habeas without explanation. In addition, there is no evidence that either the state supreme court or the appellate court considered petitioner's insufficiency of the evidence claim on the merits. Therefore, this court will "look through" these state court decisions to the Sacramento County Superior Court's reasoned decision which denied the petition under the Dixon bar.

A <u>Dixon</u> bar prohibits the use of habeas corpus as a substitute for the appeal process. See <u>In re Dixon</u>, 41 Cal.2d 756, 759 (1953). The court must, next, determine if the <u>Dixon</u> bar is independent and adequate. To be independent the state law ground must not be interwoven with federal law. <u>Bennett</u>, 322 F.3d at 581. The <u>Bennett</u> Court prospectively held that the <u>Dixon</u> rule was not interwoven with federal law and, as a result, independent. <u>Id</u>.

The next issue is whether the <u>Dixon</u> bar is an adequate state law ground. To determine if a state ground is adequate the court looks to the time at which the petitioner had an opportunity to bring his claims on direct appeal. <u>Fields v. Calderon</u>, 125 F.3d 757, 763-64 (9th Cir. 1997). To foreclose federal judicial review, the state procedural rule must be "strictly or regularly followed." <u>Wood v. Hall</u>, 130 F.3d 373, 374 (9th Cir. 1997) (quoting <u>Johnson v. Mississippi</u>, 486 U.S. 578, 587 (1988).

The courts have previously found the <u>Dixon</u> bar adequate. <u>Protsman v. Pliler</u>, 318 F.Supp.2d 1004, 1014 (S.D. Cal. April 13, 2004); <u>Allard v. Olivarez</u>, 1998 WL 19468, *3 (N.D. Cal. Jan. 12, 1998); <u>Havey v. Hubbard</u>, 1998 WL 654453, *4 (N.D. Cal. Sept. 17, 1998). As a result, the burden is shifted to the petitioner to demonstrate the inadequacy of the state procedure. The petitioner makes no mention of inadequacy in his petition or traverse. Thus, petitioner's claim regarding insufficiency of evidence is procedurally barred from federal review.

Even if the court considered the merits of petitioner's insufficiency claim, it should be denied. When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); <u>Payne v. Borg</u>, 982 F.2d 335, 338 (9th Cir. 1992). It is the province of the jury to 'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." <u>Jackson</u>, 443 U.S. 307, 319. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these

1 jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991). Under Jackson, the federal
2 habeas court determines sufficiency of the evidence in reference to the substantive elements of
3 the criminal offense as defined by state law. Jackson, 443 U.S. 307, 324 n. 16.

    Here, petitioner claims "that the evidence at trial was constitutionally insufficient to support the specific intent to steal elements in both robbery convictions..." (Pet. at 5.) However, besides this conclusory allegation, petitioner does not explain why a rational jury should not have reached the guilty verdicts they reached or provide any factual support.

    Conclusory allegations of constitutional violations of federal rights without any support, do not create a basis for habeas relief. James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994); Campbell v. Wood, 18 F.3d 662, 679 (9th Cir. 1994).

    Moreover, at trial the evidence presented included petitioner striking the first victim in the head causing her to sustain injury to her head and arm. (RT 634, 122-23, 659.) The evidence presented regarding the second robbery included the petitioner running at the vicitm with his fist raised and yelling, "dirty-rotten mother-fucking white bitch." ( RT 475-77.) Petitioner punched the second victim on her raised arms. (RT 479.) The second victim's injuries included a gash on her wrist, a bruise on her arm, and a mark above her right eye. (RT 481, 517.) In both case, petitioner fled the scene once he had the female victims' purse. Thus, it was reasonable for the jury to find the petitioner had the requisite intent to steal and petitioner's claim should be denied on the merits, as well.

II.  Remaining Claim

    In his second claim, the petitioner alleges ineffective assistance of appellate counsel. Specifically, petitioner claims his appellate counsel was ineffective for failing to argue his insufficiency of evidence claim on appeal.

    The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). First, a petitioner must show that, considering

all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990)(citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Williams v. Taylor, 529 U.S. 362, 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies...If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice...that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

The Strickland standards apply to appellate counsel as well as trial counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." Id. Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." Id.; Smith v. Steward, 140

F.3d 1263, 1274 n.4 (9th Cir.), cert. denied, 525 U.S. 929 (1998).  Further, there is, of course, no obligation to raise meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this context, petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal.  Miller, 882 F.2d at 1434 n.9.

      Here, petitioner claims that his appellate counsel was ineffective for not arguing his insufficiency claim on appeal.  However, petitioner fails to show how he was prejudiced.  At trial, there was eyewitness testimony by the victims which was corroborated by bystanders.  Again, petitioner simply concludes his counsel was ineffective.  Therefore, petitioner's second claim for ineffective assistance of counsel should also be denied.

Conclusion

      Therefore, IT IS HEREBY RECOMMENDED THAT the petitioner's petition for writ of habeas corpus be DENIED.

      These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within five days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 3, 2005.

                                        s/Craig M. Kellison  
                                        UNITED STATES MAGISTRATE JUDGE